[Civ. No. 1430.   Third Appellate District.—January 14, 1916.]

## A. BRONGE, Respondent, v. MOWAT & COMPANY, Appellant.

CONTRACT — SALE OF RAISIN CROP — PLEADING—AMENDMENT OF COMPLAINT—REFUSAL TO STRIKE FROM FILES—SINGLE TRANSACTION.— In this action, which involved but a single transaction of the alleged sale by plaintiff and purchase by defendant of a certain lot of raisins at a certain price per pound alleged to have been delivered in a certain number of sweat boxes, as to which latter the only dispute was whether or not the defendant had appropriated them to its own use and benefit and as to their value, it is held that the defendant was not prejudiced by the refusal to strike the second amended complaint from the files on the ground that it stated a new cause of action, as the facts all related to one and the same transaction and the relative rights of the parties were fully exploited at the trial upon such complaint and the answer thereto.

ID.—QUALITY OF RAISINS—SUFFICIENCY OF EVIDENCE.—It is held herein that there was evidence from which the jury were justified in finding that the raisins were of the quality called for by the contract.

ID.—APPEAL—FINDING ON CONFLICTING EVIDENCE.—Where the evidence is conflicting and there is substantial evidence sufficient to justify the finding in question, the reviewing court will not disturb it even though the evidence would have justified a finding favorable to the opposing party.

ID.—TIME OF DELIVERY—SUFFICIENCY OF EVIDENCE.—It is also held that considering all the circumstances, together with the failure to

express a definite date for the delivery of the raisins, the jury were justified in finding that there was no violation of the terms of the contract so far as the time of delivery was concerned.

Id.—Acceptance of Raisins—Sufficiency of Evidence.—Where it is shown that the raisins were such as were called for by the contract and were delivered on time, it became defendant's duty to accept and pay for them.

Id.—Acceptance of Portion of Raisins—Effect upon Delivery—Instruction.—An instruction "that the evidence is without contradiction in this case that the raisins in question were tendered to defendant, who thereupon accepted a portion thereof; and if you believe such evidence and so find, then the court instructs that the defendant is estopped from claiming that such raisins were not delivered on time," is erroneous, but without prejudice, where it is found on sufficient evidence that the raisins were of the proper quality and tendered on time.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.    George E. Church, Judge.

The facts are stated in the opinion of the court.

Strother & Aynesworth, and M. K. Harris, for Appellant.

James Gallagher, and L. L. Cory, for Respondent.

CHIPMAN, P. J.—The original complaint alleged that "on or about the 17th day of September, 1912, plaintiff sold and delivered to defendant 78,458 pounds of raisins at the agreed price of 3 cents per pound, making a total price of $2,353.54; and defendant purchased and received the same at said price"; that the whole thereof is now due and unpaid, with interest at seven per cent per annum from said date.  In a second cause of action it is alleged that, on or about the seventeenth day of September, 1912, defendant took and converted to its own use 454 sweat boxes belonging to plaintiff, which were of the reasonable value of 75 cents each, or a total value of $340.50; that no part of said sum has been paid, and the same is due and owing from defendant to plaintiff, with interest thereon at seven per cent per annum from said date.  Judgment is prayed for $2,694.24, with interest at seven per cent from September 17, 1912, to date of judgment.  The complaint was filed September 27, 1912.

On October 23, 1912, plaintiff filed a first amended complaint. The first cause of action is the same as in the original complaint. The second cause of action is the same as stated in the original complaint except that it is alleged that "said raisins were so delivered and received in 454 certain sweat boxes belonging to plaintiff, of the reasonable value of 75 cents each and which sweat boxes defendant took, applied and appropriated to its own use and benefit," and that plaintiff demanded of defendant a return which defendant failed and refused to do.

On January 13, 1913, plaintiff served and filed a second amended complaint by leave of court. In this amended complaint plaintiff alleged that on or about June 10, 1912, "a certain agreement in writing was made and entered into between the plaintiff and the defendant for the purchase and sale of a certain crop of raisins then owned by the plaintiff, to-wit, all the crop of loose muscatel raisins grown and produced during the season of 1911, upon the ranch of said plaintiff at Las Palmas, Fresno county, estimated in quantity to be about 40 tons at the agreed price of 3 cents per pound, all in accordance with the terms and provisions of said contract, a true copy of which is hereto annexed and marked exhibit 'A' and made part of this amended complaint"; that, by the provisions in said contract, "to-wit, 40 tons L. M., 1911 crop, 3," the parties hereto meant, to wit: 40 tons of loose muscatel raisins of the 1911 crop, price three cents per pound, and was so understood by the parties; that, pursuant to said contract, plaintiff delivered and defendant accepted 78,458 pounds of the raisins therein referred to at the agreed price of three cents per pound, amounting in all to $2,353.74; that no part of the same has been paid, and there is now due and owing from defendant to plaintiff the said sum of $2,353.74, with interest from September 17, 1912; that plaintiff has duly performed each and all the provisions of said contract on his part to be performed. In a second cause of action it is alleged that, on or about June 10, 1912, the plaintiff sold and delivered to defendant and defendant purchased of plaintiff 78,458 pounds of loose muscatel raisins at the agreed price of three cents per pound, the reasonable market price thereof; that no part of the same has been paid, and there is now due and owing to plaintiff from defendant $2,353.74, with interest at seven per cent per annum from September 17, 1912. As a

third cause of action it is alleged that, on or about September 17, 1912, plaintiff was the owner of and entitled to the possession of 454 sweat boxes of the reasonable value of 75 cents each, amounting to $340.50, and that, on said day, without plaintiff's knowledge or consent, defendant took and appropriated said sweat boxes and all thereof, and ever since has retained and still retains the same to her own use and benefit; that no part of the same has been paid and the whole thereof is due and unpaid. Plaintiff prays judgment for the sum of $2,694.24, with interest from September 17, 1912, at seven per cent per annum.

In each of the complaints it is alleged that V. A. Mowat was, at all times mentioned therein, transacting business under the fictitious name of Mowat & Co., in which business said V. A. Mowat was the only person interested, and that neither said defendant nor said V. A. Mowat has at any time filed in the office of the county clerk of Fresno County any certificate stating either the name or her place of business, and no such certificate was ever published in any newspaper.

Defendant answered and interposed demurrers to the original and first amended complaints, which need not be further noticed, as the latter were superseded by the second amended complaint.

The contract pleaded is dated June 10, 1912, and is between plaintiff seller and defendant buyer, and states that, "in consideration of the price per pound herein specified, the seller has sold and the buyer has bought the hereinafter mentioned first crop of the seller as follows (estimated by seller):

| Quantity. | Variety. | Price. |
|---|---|---|
| 40 tons | L. M. | 3 |
| | 1911 crop. | |

To be paid for by Sept. 14th, 1912." Buyer to pay "at the price above named when delivery is completed, provided the seller delivers the same thoroughly and properly dried and cured, of good color, in original condition, free from defective fruit or damage of any kind and in good marketable and merchantable condition, at buyer's packing house at Fresno, California, and not later than the —— day of —— any time after Sept. 1st, 1912 (unless otherwise agreed upon, which seller agrees to do). Provided, however, and it is hereby expressly agreed, that buyer shall not be compelled to receive or pay for any fruit not delivered by the last named

date nor pay for any fruit which exceeds said estimate plus ten per cent. (10%) thereof, nor to receive or pay for any fruit which is not a part of such crop. . . . Buyer shall be entitled to weigh back and reject any portion of crop delivered, not conforming with the terms and conditions of this contract and such rejection by buyer shall not invalidate this contract or release the seller from any of its obligations. . . . This contract is understood by both parties to constitute an absolute sale, but until delivery has been completed, seller agrees to and does assume all risks of loss or damage to any undelivered fruit. . . . Time is of the essence of this contract.

"(Signed)    A. BRONGE, Seller.

"MOWAT & CO., Buyer.

"By E. V. FOLEY."

Defendant served and filed its answer January 23, 1912, and therein denied that plaintiff delivered the raisins mentioned in said contract; alleged that in accordance therewith the raisins were to be delivered, and it was so understood by the parties, after the first and on or before the fourteenth day of September, 1912, and plaintiff failed to deliver the raisins therein mentioned, or any raisins, until said contract had expired, and none was tendered to defendant until September 17, 1912; denied that defendant accepted 78,458 pounds or any number of pounds of raisins at the agreed price of three cents per pound, and alleged that the contract had expired before any raisins were tendered or offered to defendant, and defendant refused to receive or accept the same "and did not receive or accept the same or any thereof"; alleged that "when said raisins were tendered and offered to defendant the same were not thoroughly or properly dried or cured, of good color, in original condition, free from defective fruit or damage of any kind, marketable and merchantable . . . " but "were wet, sugared, fermented, rotten, decayed and in an unfit condition to be packed or sold"; denied that there is due plaintiff from defendant the sum claimed or any sum. Answering the second cause of action, denied that, on June 10, 1912, or at any time, plaintiff sold and delivered to defendant or that defendant purchased of plaintiff 78,458 pounds or any number of pounds of raisins at the agreed price of three cents per pound or any price per pound; alleged that, during the month of June, 1912, the reasonable value of loose muscatel raisins was not above two and a

quarter cents per pound. Answering the third cause of action, denied that, on September 17, 1912, or at any time, defendant took or appropriated 454 sweat boxes belonging to plaintiff; denied that said sweat boxes were of the value of 75 cents each or of any greater value than 25 cents each; alleged that on said date plaintiff brought to defendant's packing-house a large number of sweat boxes containing raisins; "that defendant's foreman rejected said raisins and refused to accept the same, but that defendant (plaintiff?) requested plaintiff's (defendant's) workmen to unload said sweat boxes and store them so as to save plaintiff demurrage on the cars and that said sweat boxes were unloaded and placed in and around defendant's packing house at plaintiff's request and not otherwise"; that at the time of the unloading of the same defendant "tried to get plaintiff to take the same home, but that he refused to do so"; that defendant has frequently since said date requested plaintiff to remove said sweat boxes but he has neglected and refused so to do; "that plaintiff (defendant?) has never used or claimed said sweat boxes and the same are and have been at all the times herein mentioned under the control and subject to the disposition of the plaintiff."

The cause was tried by the court with a jury and plaintiff had a verdict for $2,309.59 on which judgment was entered. Defendant appeals from the judgment and from the order denying its motion for a new trial. The pleadings are verified.

Defendant's first assignment of error arises out of the refusal to grant defendant's motion to strike the second amended complaint from the files, made upon the ground that it "states an entirely new and different cause of action from any stated in the prior complaints herein and substitutes an entirely different and new cause of action."

The second amended complaint was served and filed January 13, 1913, and, on January 23, 1913, defendant served and filed its answer thereto. On January 21, 1913, defendant served and filed its motion to strike the amended complaint from the files, noticing the hearing thereof for January 26, 1912. The motion was denied. The cause came on for trial February 27, 1913, and was tried on the issues made by the second amended complaint and the answer thereto. No objection was made at the trial to evidence submitted in sup-

port of this complaint on the ground stated in the motion. The cause was tried upon the merits of the action therein set forth and upon the merits of defendant's view of the transaction as alleged in the answer. Both complaint and answer, as well as the evidence, showed beyond any question or doubt that there was but one transaction in controversy, and that was the alleged sale by plaintiff and purchase by defendant of a certain lot of raisins at a certain price per pound alleged to have been delivered in a certain number of sweat boxes, as to which latter the only dispute was whether or not defendant had appropriated them to its own use and benefit and their value. Even if the original complaint was grounded on an implied contract and the second amended complaint counted on a contract in writing, the facts all related to one and the same transaction, and the relative rights of plaintiff and defendant growing out of that transaction were fully exploited at the trial upon the second amended complaint and defendant's answer thereto. We cannot see how defendant was prejudiced or injured by the action of the court in refusing to strike from the files the second amended complaint. If the ruling was error, still we are not permitted to reverse the judgment on account of it "unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error . . . the party complaining sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (Code Civ. Proc., sec 475.)

Defendant pleaded and at the trial relied upon, and now relies upon, the following defenses: 1. That the raisins were not of the quality or in the condition agreed upon in the contract; 2. That the raisins were not delivered within the time provided in the contract and were never accepted by defendant; 3. That the sweat boxes were never appropriated by defendant, but, on the contrary, defendant notified plaintiff to remove the boxes.

The execution of the contract is not disputed, and the uncontradicted evidence was that the raisins were shipped in two carloads from plaintiff's warehouse on September 17th and reached defendant's packing-house on September 18th, and plaintiff testified that there were 78,450 pounds in the lot.

It appears that the contract was for plaintiff's 1911 crop and was made with plaintiff by defendant through its agent, E. V. Foley, the raisins at that time being in plaintiff's warehouse. Foley testified: "I am a fruit buyer and green fruit shipper, and signed Mrs. Mowat's name to the contract with Bronge. I inspected Bronge's raisins before I bought them. I possibly inspected a dozen boxes on the top of the pile. I dug in five or six boxes of raisins and found them dry raisins. They were uniform in size. I made all the inspection I thought necessary. It depends upon who you are buying from whether you inspect all the boxes in the pile. I didn't examine any other raisins. I made the contract as the result of my inspection and considered what raisins I saw as good merchantable and marketable, good standard raisins."

Plaintiff testified: "They were all the loose muscatel raisins produced on my vineyard during the year 1911. The raisins were standard quality, properly dried, cured the year before, 1911. They were the old raisins. They were in a marketable and merchantable condition. They were delivered in the ordinary sweat boxes. When this action was brought I was returned 150 sweat boxes. I delivered 454, all told, to Mrs. Mowat. The value of these sweat boxes were 55c each. At the time I shipped them to the defendant, they were just bought. No part of the price for the sweat boxes has been paid to me. I demanded the return of the sweat boxes before bringing the action. The only response I got to the demand was I received 150. . . . I was present when the raisins was loaded in September and weighed them off. The raisins were in good condition. There was no difference in the condition of the raisins when they were delivered and when they were examined by Mr. Foley in June."

Witness S. J. Wall testified: "I am a fruit and raisin buyer. I wanted to buy the raisins for Bonner Packing Company and examined them near the latter part of August, 1912. I examined fifteen or twenty boxes and considered them standard raisins. I offered Bronge 2¼c for the muscats. I think they were properly dried and cured, good marketable and merchantable raisins of good color and free from defective fruit."

Witness T. E. Braley testified: "I am engaged in buying and handling raisins. I am familiar with the kinds of raisins produced here, and what are good standard merchantable

raisins. At Mr. Bronge's request, I examined the raisins involved in this suit. I examined ten or fifteen boxes. I took some down and examined the boxes under them. The ones I examined were good merchantable raisins, good standard muscatel raisins, and thoroughly dried and cured.''

Bearing somewhat upon the quality of the raisins is the undisputed fact that defendant's employees unloaded and put through the stemmer nearly all of one carload before any question was raised as to their condition. On the other hand, Mrs. Mowat (who constituted the firm of Mowat & Co.) testified that she examined the raisins on September 26th·(on her return from Portland, Oregon) and found practically all of them "bad, fermented and sour and partly sugared"; she testified that "they were not standard or merchantable raisins.''

Witness Cobleigh was defendant's superintendent in the packing-house. He testified: "The first ones I saw were poor, fermented raisins. . . . The raisins that had been run showed that they were wet raisins, had been mixed in wet and had fermented. The raisins that were stemmed were worth from a quarter to a half a cent less than the market price for standard raisins which was at that time from two to two and a quarter cents a pound." Of the raisins in the second car he testified that he had examined them to "some extent." He testified: "I would not say I had given them a thorough examination." He testified further: "I don't know what time these raisins came in. I was not there at the time. At the time my attention was called to them, the greater part of the raisins in the one car had been unloaded, all but 15 or 20 boxes. Most of the rest had been stemmed, and some of them were still on trucks in the packing house. The second car was still unloaded when Mr. Bronge came in, it was still intact and sealed. I made no attempt to examine them while he was there. I would not accept or.reject them.''

Witness G. E. Ricker "was Mrs. Mowat's foreman." He testified: "I saw the raisins being weighed in from the first car and put through the stemmer." He testified that the raisins "were rotten." Several other witnesses, some of them raisin growers, testified that the raisins were not standard, merchantable raisins.

We have given enough of the facts upon the question of the quality of the raisins to show that the evidence is sharply

conflicting. It is too well settled to require supporting authorities that where the evidence is conflicting and there is substantial evidence sufficient to justify the finding in question, the reviewing court will not disturb it, and this is true even though the evidence would have justified a finding favorable to the opposing party. There was evidence from which the jury were justified in finding that the raisins were of the quality called for by the contract.

As to the time of delivery the contract is not clear. It provided that the raisins were "to be paid for September 14th, 1912." The provision as to delivery is incomplete. It reads: "not later than the —— day of —— any time after Sept. 1st, 1912 (unless otherwise agreed upon), which seller agrees to." It then provides "that the buyer shall not be compelled to receive or pay for any fruit not delivered by the last named date. . . . Time is of the essence of this contract." On Saturday, September 14, 1912, plaintiff wrote defendant that he had been busy shipping malagas and "delayed in delivering 1911 raisins, but," he wrote, "having spare men and teams now I shall load these raisins (two carloads) on Monday next, and you may expect them the day after." They were loaded the 16th, shipped the 17th, and arrived at defendant's packing-house the 18th. One car was unloaded and the raisins run through the stemmer before any objection arose, and the objection was to the quality and not to the delay in delivering them. That question was not raised until the return of Mrs. Mowat. On September 26th she wrote plaintiff: "On my arrival home I found your raisins were delivered during my absence, after the expiration of your contract, though I left positive instructions not to take in any raisins after the expiration of contract. Several tons had been stemmed, when part of these raisins were found to be badly fermented and sugared, and unfit for human consumption." After calling plaintiff's attention to the provision—"Payment to be made by September 14th," she adds "which presupposes delivery to have been completed by that date. Mr. Foley in writing out your contract omitted to state, 'delivery to be completed by fourteenth.' . . . We, therefore, reject on quality, and also refuse to take because contract had expired when delivery took place."

Mr. Foley testified that when he and plaintiff were arranging the terms of the contract the time of delivery came up and

plaintiff told him he could ship them on the 1st of September and that defendant could pay September 14th, as Mrs. Mowat "would be back by that time. He said it would be all right. Q. Did he say anything about what time he could ship them? A. Not at that time, only he said he would ship them at any time after the first of the month. Q. Was there anything said in that connection in regard to his shipping them in time to be disposed of by the 14th? A. The only thing I remember of, I told him she would be able to finance herself and move raisins and pay for them by the 14th."

Considering all the circumstances, together with the failure to express a definite date for the delivery of the raisins, we think the jury were justified in finding that there was no violation of the terms of the contract so far as the time of delivery was concerned.

The question of acceptance remains. We have stated Mr. Cobleigh's testimony in part when he discovered the condition of the stemmed raisins. He testified further: "I called Mr. Bronge up on the telephone before noon (the day the raisins were stemmed) and told him there were rotten raisins in the lot. He came in after dinner, and I showed him the raisins that were scattered through the boxes, and told him that it would be impossible to accept anything like that and he asked me how many there were and we had one truck load saved out, loaded, and some on the floor. He mentioned an adjustment and I told him Mrs. Mowat was away, and that I would not make any adjustment but leave it up to her when she returned. Mr. Bronge said he knew there were two boxes that were a little off; otherwise, supposed the whole lot was first class. When I showed them to him, he said he was not aware that they were that way—in that condition." He testified that the result of the meeting was that the other car was to be unloaded at plaintiff's request to save demurrage. and "he agreed to let things rest until Mrs. Mowat returned. I refused to unload them on any condition. I did not accept nor reject that car of raisins."

As to this conversation plaintiff testified: "I had a conversation with Mr. Cobleigh on the 19th of September, 1912, in regard to the raisins which he showed me at that time. I did not make the statement to him in that conversation that if I had known the raisins were in the condition they were in, I would not have sent them in. The raisins were not damaged

at all. One car had not been unloaded at that time. Part of the other car had not been unloaded. Mr. Cobleigh did not tell me that he would not take the raisins—that they were not in good shape. He did not tell me that they were wet, sugared, and had fermented, and that he would not take them. He proposed to unload the remaining sweat boxes to save me demurrage on the car. I did not urge him to do it. He did not unload them at my request. I did not ask him to place them on the porch so as to get them out of the car. No conversation of that kind took place at all at that time and place. He showed us the raisins about half-past 11. We came in the afternoon. He said the raisins were too heavy and sticky. There were nine boxes left in the car that were unloaded. The others had gone through the stemmer and stemmed out. He showed us the raisins, and argued the point. He said he would not unload the other car. I said that he had to unload the car because it was part of the shipment of the other car. It was one order, that was all. That is everything that was said between Mr. Cobleigh and I. I did not examine the raisins that were stemmed. I examined the ones that were unloaded. Only examined those that they had in the car. Nine boxes had not been unloaded. I did not admit to Mr. Cobleigh that the raisins were not up to standard. I didn't have an understanding with Mr. Cobleigh that the remaining part of the car would be unloaded and try to adjust the matter with Mrs. Mowat when she came back from 'Frisco. There was nothing said about my adjusting the matter of the damaged raisins with Mrs. Mowat. I didn't tell Mr. Ricker at the packing house that if I had known the condition which the raisins were in, I would not have shipped them.''

It seems to us that, having shown that the raisins were such as called for by the contract and were delivered on time, it became defendant's duty to accept and pay for them. Plaintiff was not required to prove more, and acceptance was made out unless the jury were compelled from the evidence to find that plaintiff admitted the inferiority of the raisins and agreed to adjust the matter on the assumption that the raisins were not up to standard. We cannot say that the jury were under any such compulsion. The jury had the right to believe plaintiff when he denied having admitted or said what witness Cobleigh testified to. Upon this point error is claimed because the court gave the following instruction: ''And you

are further instructed that the evidence is without contradiction in this case that the raisins in question were tendered to defendant, who thereupon accepted a portion thereof. If you believe such evidence and so find then the court instructs that the defendant is estopped from claiming that such raisins were not delivered on time." This instruction defendant claims is error and was prejudicial because by it "the jury are told that the evidence showed without contradiction that the defendant accepted a portion of the raisins," whereas it "was a question which should have been submitted to the jury." Attention is called to the concluding paragraph of the instruction which states, "if you believe such evidence," i. e., the evidence which the court said was uncontradicted, "the defendant is estopped from claiming that such raisins (all of them) were not delivered." We do not think, in view of all the evidence, that the court was justified in instructing the jury that defendant accepted a portion of the raisins. The only evidence on that point was that a portion was unloaded and run through the stemmer in the absence of the superintendent who, as soon as his attention was called to it and while the work was going on, stopped stemming and immediately called up plaintiff, who came at once to the packing-house. The unloading and stemming of these raisins was a strong circumstance indicating acceptance of the raisins taken from the car, but under the circumstances it was not conclusive, and the court was not justified in telling the jury that the evidence of acceptance was uncontradicted, thus taking the fact away from the jury. But the jury found, on sufficient evidence, as we have held, that all the raisins were of the quality required by the contract and that plaintiff tendered them on time; defendant was therefore liable whether it accepted or rejected the raisins. Hence, the instruction was without prejudice.

Defendant was refused the following instruction: "You are instructed that the raisins received into defendant's packing-house were received after the contract had expired and if said raisins were received under a mistake of fact as to their quality or condition, then defendant is not liable for their value as per the contract, but only for the market value of raisins of that kind at that time."

The raisins were delivered in time, so the jury found, though a few days after September 14th, and there was no

claim made in the answer and no evidence in support of a claim that the raisins were received by mistake. It was not error to refuse the instruction.

Instructions marked 12 and 13, offered by defendant, were refused. They were as follows:

"12. Should the jury believe that according to the terms of said contract, and the intention of said parties, said raisins were to be delivered before the 14th day of September, 1912, and they were not, as a matter of fact, delivered or offered to be delivered until the 17th day of September, 1912, then as to the raisins rejected and not accepted by defendant, your verdict should be for the defendant.

"13. Should the jury find that the delivery of the raisins was not accepted by defendant or its agents, but that said raisins were unloaded from said cars at defendant's packing house at plaintiff's request and for his accommodation to save demurrage, and to await the return of Mrs. Mowat, then, in that case, plaintiff cannot recover in this action, and you must find a verdict in favor of the defendant."

Number 12 ignores the consideration of evidence tending to show that even if the intention was as claimed by defendant the condition was waived. Number 13 is based upon a condition of facts which if found by the jury would have required a verdict for defendant. The facts were found against defendant. We discover no error in refusing the instructions.

As to the alleged conversion of 454 sweat boxes less 150 returned, the evidence is slight. Plaintiff testified: "When this action was brought I was returned 150 sweat boxes. I delivered 454 all told to Mrs. Mowat. The value of these sweat boxes was 55 cents each. . . . No part of the price has been paid me. I demanded the return of the sweat boxes before bringing the action. The only response I got to the demand was I received 150. . . . They were brand new sweat boxes in November, 1911, when the raisins were put on them. . . . The 150 sweat boxes were returned to me the latter part of October."

In the letter sent by Mrs. Mowat, September 26, 1912, she said: "Please call and remove your goods at the earliest convenience and greatly oblige, Yours, etc." She testified: "Mr. Bronge never asked me for the boxes; never made a demand on me for them. I wrote him a letter in regard to

29 Cal. App.—26

his taking the boxes—the one introduced in evidence this morning." (The letter said "goods" not "boxes.") On cross-examination she testified: "Mr. Bronge never made a demand upon me either verbal or written for the boxes." The plaintiff in his testimony does not say upon whom or when he made a demand for the boxes, except that it was before the commencement of the action. The contract is silent on the subject and there is no evidence as to custom. Plaintiff was to deliver the raisins and did so in boxes. There was no obligation on defendant's part to return them to plaintiff's warehouse. Defendant's obligation was to deliver them to plaintiff when called for. Plaintiff testified that he made a demand for the return of the boxes and, though Mrs. Mowat testified that no demand was made upon her, it is fair to assume that it must have been made upon some person authorized to deliver them, for plaintiff got 150, and this, he testified, was the only response he got to the demand. It was within defendant's power to explain what became of the boxes for they were in its possession and control. The verdict was for $2,309.50, which is less than the contract price for 78,450 pounds of raisins, the amount plaintiff testified he delivered. If the jury allowed anything for the boxes, we cannot say they so found without any substantial evidence.

Some assignments of error are made arising out of rulings of the court upon the admission or rejection of evidence. Objection was made to plaintiff's offer of testimony as to a certain transaction between plaintiff and defendant's agent, Foley, occurring prior to the execution of the contract. It appeared from the record that, after making a motion to strike out the testimony, defendant's counsel withdrew, the motion. This removed the sting from the objection.

When plaintiff was testifying, his counsel said to him: "Did Mrs. Mowat say anything to you about paying for these raisins?"—referring to a conversation had in her office. Objected to as irrelevant and incompetent and because on his cross-examination "Mr. Bronge denied that he ever had any conversation with Mrs. Mowat on that subject. Mr. Cory (attorney for plaintiff): He certainly testified to some conversation with Mrs. Mowat. The Court: Well, if it is relevant I will hear it; and if it is not relevant, make a motion to strike it out. Mr. Cory: Answer the question. Relate the conversation with Mrs. Mowat. (Question read.) A. Mrs.

Mowat offered us to pay us the market price of two cents for those muscat raisins, or, if we didn't accept, to keep us five years in court. Of course, we didn't like the remark, and we walked out." An exception was noted but no motion made to strike out the answer. Subsequently Mrs. Mowat was called as a witness and defendant sought by her to show what the conversation above referred to was. "Q. Did you in that conversation say anything, you or Mr. Bronge or anyone else, in regard to these raisins that are involved in this suit? A. Yes. Q. What was said? A. I don't remember as to who brought up the conversation. I may have done so, but I said that it was too bad to have a lawsuit over a matter that might be settled out of court; that if it went into court it might be in court for years, and that I was willing to pay a fair market price for the few tons of raisins that had been actually stemmed out by my employees during my absence when he sent them in, but as to the rest of them I would not consider them at any price, as they were not merchantable, could not be shipped out, were not fit for human food." Plaintiff objected and moved to strike out the answer. "There is no statement of Mr. Bronge, those were statements in favor of the witness, and also an attempt to compromise pending litigation. The Court: I rather expected for you to object to that as a matter of compromise, and that it couldn't be given, anything of that kind, because the court desires that there should be a compromise of all disagreements. I think the motion should be granted. Mr. Aynesworth (defendant's attorney) : Because they put it in themselves, can they object to Mr. Bronge's reply? The Court: It doesn't follow that because one thing was wrong, the other ought to be allowed. Two wrongs do not make a thing right." That meeting of the parties was brought about to effect an adjustment of their differences, as appears from the record. Plaintiff's testimony should not have been allowed, but the court permitted the witness to answer with the understanding that if not relevant a motion might be made to strike it out. This, however, was not done and the answer stood. We cannot say the court erred in cutting off further testimony as to what was said in the effort to adjust existing differences. Offers of compromise are not necessarily admissions that the claim or defense is lacking in merit; and such offers are not in general admissible. (Jones, Law of Evidence, sec. 293.)

Continuing her examination, she was asked whether in that conversation Mr. Bronge made "any statement to you at the time (as to the time?) of the delivery of the raisins. A. I asked them why they delivered them or attempted to deliver them after their contract had expired, and they answered— The Court: You mean Mr. Bronge? A. Mr. Bronge and also Mrs. Bronge. They said: 'Well, why did you men touch them, we sent them—if we sent them in after the contract had expired, why did they touch them?' " On motion of plaintiff the answer was stricken out.

The contract was before the jury and also the undisputed fact that the raisins were delivered three days after the date claimed by defendant for the delivery. The contract, we have seen, was not clear on the point. The answer cast no light upon the matter and was not responsive to the question; besides, it was part of a conversation had in the effort to compromise. We cannot see that the ruling was prejudicial. Later on Mrs. Mowat was asked what Mr. Cobleigh's authority was, the purpose being to show that he had no authority to accept the raisins or to accept raisins tendered after the contract had expired. The court ruled that defendant could show that Cobleigh rejected the raisins but could not show that he had no authority to accept the raisins. The undisputed fact was that Cobleigh was defendant's superintendent and in full charge of her business at the packing-house in her absence; that he assumed to act in the matter as such superintendent. Under the circumstances shown in this case we do not think that defendant could evade responsibility by showing want of authority in her superintendent.

We have noticed all the assignments of error which seem to call for consideration and discover no ruling justifying a reversal.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 13, 1916.